## In re Custody of Ballot Boxes

B. Robert Averbach, for petitioner; Ralph H. Frank, for respondents.

ELDER W. MARSHALL, J., February 15, 1933.—The sheriff of this county has petitioned for approval of employment of special deputy sheriffs to guard ballot boxes deposited with him for safekeeping. The answer of the county commissioners is in the nature of a demurrer, the effect of which is to admit the truth of the allegations contained in the petition.

The facts thus admitted are that immediately after the general election held on November 8, 1932, the court ordered the ballot boxes in certain designated election districts to be delivered to the sheriff for safekeeping until further order of court; the boxes were so delivered and have since been guarded by four persons, employed by the sheriff as special deputy sheriffs for the purpose, at a wage of $5 each per day. Although it is recited in the petition that the district attorney has notified the sheriff to retain said boxes until he determines which of them he may need for investigation, it now appears that the district attorney no longer desires any of said boxes to be kept on his account, and that on February 1, 1933, all boxes in the custody of the sheriff, as well as all others throughout the county, pursuant to an order of this court, were delivered into the custody of the county commissioners for safekeeping. The sheriff's duty respecting the boxes now in question has therefore been performed and concluded, whereby it is now manifest, as indeed it was when this petition was presented, that such duty was but temporary.

The grounds on which the demurrer is rested are that the court was and is without authority to order the boxes delivered to the sheriff or to ratify the employment of special deputies, and that only the salary board may determine the necessity for the employment of deputies and the amount of compensation to be paid them.

The reasons for committing custody of the boxes to the sheriff were (1) an alleged mistrust of the aldermen or justices to whom otherwise the boxes would have been delivered; (2) lack of proper facilities for their safeguarding; and (3) the court was about to proceed to recount many of them on petitions filed under the Act of April 23, 1927, P. L. 360. In many cases the magistrates were alleged to have been highly partisan in the election or their offices were said to be meeting places for persons suspected of a design to tamper with the boxes. The practice of ordering custody transferred to the sheriff is one of long standing in this county. In these particular instances it was followed in the interest of honest elections to forestall any tampering with the contents of boxes as deposited therein by the election boards. The wisdom and necessity of the practice are best demonstrated by the fact that at the last election many boxes deposited with aldermen were found to have been broken open and the ballots either befouled by additional markings or abstracted in their entirety. In view of the power and duty of the court to compute the returns of all general elections and, upon due application, to open the ballot boxes and recount the votes thereon, we have no doubt but that ancillary to that power and duty is the right to order said boxes lodged in a safe place, where they may be readily accessible to the return judges and to the judge in charge of the recount. Indeed we are of opinion that the Act of May 29, 1931, P. L. 238, is sufficiently comprehensive in its language to authorize the doing of that which we heretofore ordered done. That act provides:

"Whenever a place has been . . . provided by the authorities of any . . . county . . . for the safekeeping of ballot boxes, the judge and minority inspector shall, after the election shall be finished . . . forthwith deliver the same [boxes and prescribed contents] . . . to such person or persons as the court of common pleas of the proper county may designate, at the place provided as aforesaid, who shall then deposit the said boxes and keep the same to answer the call of any court or tribunal authorized to try the merits of such election."

The commissioners have provided an office for the sheriff, and as it is a suitable place for the safekeeping of ballot boxes the court would seem to have authority to designate the sheriff as custodian of the same.

Likewise we are of one mind that the temporary employment of special deputy sheriffs in emergency matters is not within the province of the salary board. The Act of April 29, 1915, P. L. 200, establishing a salary board in each county of the second class, provides that it shall be the duty of the board:

"To fix and determine . . . the number and compensation of the employes of any and all county offices . . . Provided, however, The number of said employes and the salaries to be paid them have not otherwise been specifically determined by an act of Assembly."

But this act must be read in the light of the Act of April 9, 1915, P. L. 54, 58, which specifies that:

"For services performed . . . when discharging the duty requiring the summoning of a posse comitatus or special deputy sheriffs, the sheriff shall receive a per diem compensation of not less than ten dollars, and as much more as is commensurate with the services performed, . . . to be paid by the county unless otherwise provided by law."

This statute contemplates that in certain situations the sheriff must, of necessity, employ special deputies to assist him for the time being. They are deputies for some special, that is, temporary or limited, purpose, just as is a posse comitatus. Obviously the salary board need not be called together to determine the necessity for their employment; that must be determined by the emergency, and when the emergency is at an end, so also is their employment. Instead of providing that they shall be paid from the county treasury, the act specifies only that the sheriff shall be paid, and that his compensation shall be commensurate with the services performed, i. e., by himself and the special deputies under him.

The purpose of the legislature in setting up salary boards was of course to control the salary expenditures of fee offices, in order to insure that salaries paid should not exceed fees earned. It is a laudable purpose, aimed at holding in check the cost of local administration: Sterrett v. MacLean et al., 293 Pa. 557. But even such a meritorious statute is not to be so narrowly construed as to require that a sheriff shall first obtain the board's approval before summoning a posse to quell a riot, prevent a jail delivery, or apprehend a fugitive from justice, or before employing a special deputy to assist in performing a duty laid upon him in emergency and which necessarily will endure for but a limited time. The hands of the chief officer of public peace and safety should not be so tied, nor do we think the legislature so intended it.

We are of opinion, therefore, that not only had the court authority to order the ballot boxes impounded with the sheriff, but that a faithful performance of such order necessarily obligated him to summon and swear in special deputies to protect and safeguard the boxes entrusted to him. In our original orders for impounding, we might well have directed the employment of a specified number of guards. Not having done so, the sheriff's action will now be approved and confirmed, especially since the county commissioners have not questioned either the number of the deputies or the wages paid to them.

### Order

And now, February 15, 1933, the demurrer to petition filed at above number and term is overruled, and the action of the Sheriff of Allegheny County in employing four special deputy sheriffs to guard ballot boxes committed to his custody from November 9, 1932, to February 1, 1933, is hereby ratified and approved.

From William J. Aiken, Pittsburgh, Pa.